WISHNER, Appellant, vs. UNITED STATES FIDELITY &
GUARANTY COMPANY, Respondent.

*April 4—April 30, 1929.*

For the appellant there were briefs by *A. L. Skolnik,* attorney, and *William H. Churchill,* of counsel, both of Milwaukee, and oral argument by *Mr. Skolnik.*

For the respondent there was a brief by *Bloodgood, Kemper & Bloodgood,* attorneys, and *Wheeler P. Bloodgood* and *Samuel Becker,* of counsel, all of Milwaukee, and oral argument by *Mr. Becker.*

ROSENBERRY, C. J.   The question presented here is whether or not the defendant is obliged to account to the plaintiff for the total gross sum realized by it on account of claims assigned to and collected by it, or whether it has the right to deduct from the amounts collected the·necessary and reasonable costs of collection.   This requires a consideration of the terms of the policy.   The policy guarantees the plaintiff against loss "due to insolvency, as hereinafter defined, of debtors, and which loss shall result from the assured's *bona fide* sales of hides and skins shipped and delivered, during the term of this policy, in the usual course of the assured's business of jobbers of hides and skins."

By the terms of the policy the defendant agrees—

"Within sixty days after receipt by the company of such

notification of claim and compliance by the assured with the conditions of clause No. 5, the payment of the ascertained actual undisputed net loss shall be made as hereinafter set forth.

"7. *Method of adjustment.* To ascertain the net payment to be made to the assured on any covered and proven loss under this policy, there shall be deducted from each gross loss—

"(1) The agreed percentage of co-insurance to be borne by the assured;

"(2) All amounts collected thereon and all amounts which may have been obtained or made secure from any other source;

"(3) The invoiced amount of goods returned or replevined, when such goods are in the possession of the assured.

"If the indebtedness of the debtor to the assured at the time of insolvency is not covered in full by this policy, then the deductions provided for in subdivisions (2) and (3) hereof shall be made *pro rata,* viz.: in the ratio which the amount covered bears to the whole of such indebtedness.

"The amount then ascertained to be due shall immediately be paid to the assured, less any setoffs or counterclaims, and the assured shall immediately assign to the company all invoices admitted in adjustment, together with all securities and guarantees relating thereto, and shall warrant the legal validity of the indebtedness for the amount of such invoices, and shall agree to reimburse the company for any amounts paid by the company to the assured on any indebtedness which cannot be legally maintained against a debtor, together with the expenses of any legal action connected therewith.

"If any covered and filed invoice of the assured against a debtor is disputed, in whole or in part, the same shall not be admitted in any adjustment under this policy until after it has been finally determined to be a legally valid claim against the debtor, and the assured shall bear the expense of establishing the legal validity of the claim.

"If the indebtedness of any debtor to the assured at the time of insolvency is in excess of the gross amount insured, the company shall handle such indebtedness for the joint account of the assured and the company as their interests may appear.

"If the net amounts realized by the company on invoices assigned to it, as provided above, shall exceed the sums paid ·or to be paid to the assured, the company shall refund the net excess."

It appears from the allegations contained· in the pleadings that plaintiff made demand upon the defendant for payment of certain invoices; that the defendant paid to the plaintiff the amount due under its policies and took an assignment of the invoices upon which the claim was based and thereafter collected the full amount of the invoices, from which it deducted the collection fees. Under these facts the specific question to be decided is, What is meant by the term "net amounts realized by the company on invoices assigned to it" contained in the last paragraph of subsection 7 as quoted above? As ordinarily used, the term "net amounts realized" in commercial transactions means the amount realized less the expenses necessarily incurred in connection therewith. *Gibbs v. People's Nat. Bank,* 198 Ill. 307, 64 N. E. 1060; *Williams v. Walsh Mfg. Co.* 169 Mich. 676, 135 N. W. 954; *Funk v. Mohr,* 85 Ill. App. 97, affirmed 185 Ill. 395, 57 N. E. 2.

The contention of the plaintiff amounts to this: that under ·the clause which provides that the assured "shall warrant the legal validity of the indebtedness for the amount of such in‑ voices, and shall agree to reimburse the company for any amounts paid by the company to the assured on any indebtedness which cannot be legally maintained against a debtor, together with the expenses of any legal action connected therewith," if the claim assigned turns out to be invalid the assured shall pay not only the amount of the claim but the amount expended to sustain its validity, but in case the validity of the claim is established and the claim collected in full, then the expense of collection shall fall on the insurer. This claim is supported by an ingenious argument by counsel, but we see no reason why the term "net amounts

realized" in the last paragraph of subsection 7 should not be given its ordinary and usual meaning, which is that the net amount realized is the amount remaining after deduction of the expenses incurred in the collection of the claims. Where claims are placed in the hands of attorneys for collection, the amount which the company realizes is the amount paid to it after the deduction of attorney fees. These of course must be usual and reasonable.

The mere fact that the policy provides for the payment of "the expenses of a legal action" in cases where the validity of the claim is not sustained and that a like provision is made with respect to claims the validity of which is disputed and which are not accepted by the insurer until after the validity of the claim is established, furnish no rule with regard to claims admittedly valid which are collected in full. The great mass of claims assigned are no doubt valid, but some action is necessary in order to enforce payment, and the deduction of collection fees from the amount collected is so common in the business world that the parties could scarcely have had anything else in mind than that the net amount realized meant the amount remaining after deduction of necessary collection expenses.

*By the Court.*—Order affirmed.